# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| Consumers Insurance USA, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | 12-03303-CV-S-JTM |
| James River Insurance Company, U.S. Specialty | ) | |
| Insurance Company, and Houston Casualty | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

On March 9, 2006, Gregory Dahmer came to Robert Hutchinson's place of business to purchase a rear-end differential from a mid-1960's Chevrolet.[1] While Hutchison was moving the vehicle part into the back of Dahmer's pickup using a tractor with a front-loader, his foot slipped off the clutch causing the tractor to lurch forward striking Dahmer and causing significant personal injuries. Subsequently Dahmer and his wife brought an action against Hutchinson in the Circuit Court of Greene County, Missouri. At the time of the above incident, Hutchinson was insured by Consumers Insurance USA, Inc. ("Consumers") by Consumers Policy No. AD 28760418-1.

---

[1] Hutchinson restored vehicles and owned approximately 65 acres of land, of which about half was used to store old cars that Hutchinson had purchased. Approximately 75% of the vehicles were only rolling chassis (*i.e.*, they had no engine or transmission) and were used by Hutchison for replacement parts on his restored vehicles. In addition, as in the case of Dahmer, Hutchinson would occasionally sell parts from his pool of cars to buyers looking for specific car parts.

On July 5, 2007, the Dahmers made demand on Hutchison for the policy limits of Consumers Policy No. AD 28760418-1. However, Consumers denied coverage to Hutchison.[2] Following the denial of coverage, the Dahmers obtained an uncontested judgment against Hutchinson in the amount of $2.7 million. Thereafter, the Dahmers filed a garnishment action against Hutchinson and Consumers in the Circuit Court of Greene County, Missouri. Initially, the trial court found that the "salvage operations" exclusion of the Consumers policy was applicable and granted summary judgment in favor of Consumers. Subsequently, though, that decision was reversed by the Missouri Court of Appeals for the Southern District in *Dahmer v. Hutchison,* 315 S.W.3d 375 (Mo. App. [S.D.] 2010). Following a remand of the action to the trial court, Hutchison asserted a crossclaim against Consumers alleging that Consumers acted in bad faith in its refusal to defend and pay the Dahmers' initial litigation. Eventually, Consumers confidentially settled all the claims asserted in the garnishment and bad faith crossclaim.

The present action before this Court was filed by Consumers on June 26, 2012, against James River Insurance Company ("James River"), U.S. Specialty Insurance Company ("U.S. Specialty"), and Houston Casualty Company ("Houston") seeking a declaratory judgment that policies issued by those entities entitle Consumers to indemnification of monies expended by it in defending and settling the Dahmer/Hutchison claims. On December 17, 2013, Consumers stipulated to the dismissal of James River. Accordingly, the only remaining claims before the Court are Consumer's request for declaratory judgment against U.S. Specialty and Consumer's claim for declaratory judgment against Houston. Presently pending before the Court is the combined motion for summary judgment of U.S. Specialty and Houston. For the reasons set out herein, the motion is granted as to each remaining defendant.

---

[2] Consumers asserted that the claim was excluded from coverage by a "Location and Operations Exclusion Form" that included "salvage operations."

Between 2005 and 2009, U.S. Specialty issued five "Directors, Officers and Organization Liability Insurance" policies to Consumers.[3] Each of the policies issued by U.S. Specialty was a claims-made policy.

> Most policies of liability insurance may be characterized as either occurrence policies or claims-made policies. Occurrence policies protect policyholders against incidents that occur while the policy is in force, even if the claim that arises from that incident is not filed until after the policy expires or is terminated. Claims-made policies protect policyholders against claims that are filed while the policy is in force, even if the incident giving rise to the claim occurred before the policy was executed.

*Pope v. Leuty & Heath, PLLC*, 87 S.W.3d 89, 93 (Tenn. App. 2002).[4] Each of the U.S. Specialty policies included a "Notice of Claims and Reporting Provision" which stated:

> The Insureds must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any Claim[5] as soon as practicable after it is made.

While the U.S. Specialty policies were "directors and officers" policies, the policy issued to Consumers by Houston was an "errors and omissions" policy. The Houston policy, No. 14-MG-10-A10066, was issued for the period from February 16, 2010 to February 16, 2011 and was also a claims-made policy. However, the Houston policy further limited its coverage to claims made for "wrongful acts" first committed on or after February 16, 2010. The Houston policy also contained a notice provision:

---

[3] Policy No. 14-MGU-05-A4959 (for the period February 16, 2005 to February 16, 2006), Policy No. 14-MGU-06-A11833 (for the period February 16, 2006 to February 16, 2007), Policy No. 14-MGU-07-A13989 (for the period February 16, 2007 to February 16, 2008), Policy No. 14-MGU-08-A16201 (for the period February 16, 2008 to February 16, 2009), and Policy No. 14-MGU-09-A18513 (for the period February 16, 2009 to February 16, 2010).

[4] The parties are in agreement that Tennessee substantive law applies herein.

[5] The U.S. Specialty policies define a "Claim" to include "any oral or written demand, including demand for non-monetary relief" or "any civil proceeding commenced by service of a complaint or similar pleading."

> As a condition precedent to any right to payment in respect to any Claim, the Insured must give the Underwriter written notice of such Claim, with full details, as soon as practicable after the Claim is first made but in no event later than sixty (60) days after the end of the Policy Period. A Claim is first made when an Insured first receives notice of the filing of a complaint, notice of charges, a formal investigative order or similar document or by the return of an indictment against an Insured or when an Insured first receives the written demand or notice that constitutes a Claim under [another definition].

With regard to written notice to either or both of the defendants, there are two letters that are at issue. The first letter, dated November 29, 2011, by Consumers' insurance broker to HCC Global Financial Products (the Claims Administrator for the subject policies issued by U.S. Specialty and for the subject policy issued by Houston). The letter specifically references the Houston policy in the "RE:" heading of the letter by including "14-MG-A10066 E&O." The letter makes no reference to any of the U.S. Specialty policies. The letter attaches pleadings from the Greene County litigation and notes that Consumers wishes to report a new "claim." On December 2, 2011, the broker sent a brief follow-up e-mail seeking the identity of the claim number that would be assigned to "the first loss notice of a claim for the above policy." The e-mail identified the carrier ("Houston Casualty Company"), the policy number ("14-MG-A10066), and the policy period ("2/16/2010 – 2/16/2011"). Again the follow-up e-mail made no mention or reference to U.S. Specialty, any of its policies, or any of its policy periods.

On February 22, 2012, counsel for Consumers sent correspondence directed to "U.S. Specialty Insurance Company c/o HCC Global Financial Products" stating:

> Your insured Consumers Insurance Group, Inc., was named as a defendant in a lawsuit in the Circuit Court of Greene County, State of Missouri. The lawsuit arose out of Consumers' denial of coverage to its insured, Robert Hutchinson, and alleged bad faith in refusing to defend and/or settle an underlying lawsuit filed by Gregory and Candi Dahmer arising out of an incident in which Mr. Dahmer's leg was broken due to the alleged negligence of Mr.

4

> Hutchinson. Consumers was initially made a party to the suit by way of a claim for equitable garnishment. Consumers' insured, Mr. Hutchinson, thereafter asserted cross-claims of bad faith against Consumers.
>
> Consumers was insured under the above-referenced policy with your company at the time this loss occurred. I am thereby tendering this matter to your company and demanding that your company indemnify Consumers for the claims made against it.

There appears to be no dispute that the November 29, 2011 letter was the first notice of Consumers' claim to Houston. With regard to U.S. Specialty, it has provided a declaration affirmatively stating that the above-quoted February 22, 2012 letter was the first notice of Consumers' claim received by U.S. Specialty. Consumers, in its summary judgment pleadings with the Court, purports to controvert this fact by referring the Court to November 29, 2011 letter and characterizing that letter as a "request for coverage" from U.S. Specialty. Consumers' characterization is not supported by the summary judgment record. The November 29, 2011 letter (and follow-up December 2, 2011 e-mail) was unambiguously meant to be and was notice only to <u>Houston</u> of a potential Consumers' claim. Similarly, the February 22, 2012 letter was unambiguously meant to be and was notice only to <u>U.S. Specialty</u> of Consumers' potential claim.

As previously quoted, the Houston policy contained a specific and express condition precedent to any right to payment under its policy, namely that Consumers provide written notice of a claim "as soon as practicable after the Claim is first made but in no event later than sixty (60) days after the end of the Policy Period." The Policy Period ended on February 16, 2011. Consumers' written notice of a claim was not provided to Houston until seven months after the end of the policy period under the Houston policy. As such, the claim was not timely and Consumers did not satisfy the condition precedent to any right to payment under the Houston policy.

The U.S. Specialty policies only required that written notice be given "as soon as practicable after [a claim] is made." In this case, the Missouri Court of Appeals for the Southern District reversed the decision granting summary judgment to Consumers in the Dahmers' garnishment action in 2010. Thereafter, according to Consumers' Vice President of Claims, on November 29, 2010, a demand was made on Consumers by its insured Hutchinson for the outstanding judgment plus interest, an amount over $3.5 million. Even affording Consumers broad latitude and utilizing this latter date as the triggering event of a "claim being first made," Consumers still waited fifteen months before providing written notice to U.S. Specialty. As a matter of law, this was not as soon as practicable. Tennessee law is in accord.

It is well settled that a condition in an insurance policy which requires the insured to give notice of a claim "as soon as practicable"

> imposes a duty on the insured to give notice when he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer.

*Reliance Ins. Co. v. Athena Cablevision Corp.*, 560 S.W.2d 617, 618 (Tenn. 1977). Certainly, "[t]he time words in the clause, 'as soon as practicable' are not words of precise and definite import." *Fulton Bellows, LLC v. Federal Ins. Co.*, 662 F.Supp.2d 976, 989 (E.D. Tenn. 2009) (*quoting Young v. Travelers Insurance Co.*, 119 F.2d 877, 880 (5th Cir. 1941)). However, the phrase is not *per se* ambiguous so as to allow an insured free reign to avoid summary judgment in every insurance dispute. Instead, the Tennessee courts have also determined that "[t]he term 'practicable' not only means reasonable, but has the additional connotation of what might be termed common or 'horse' sense." *Transamerica Insurance Co. v. Parrott*, 531 S.W.2d 306, 314 (Tenn. App. 1975). To that end, Tennessee courts have determined that delays in affording notice of a claim may be deemed to fail the "as soon as practicable" standard as a matter of law.

For instance, in *Pennsylvania, etc. Ins. Co. v. Horner*, 198 Tenn. 445, 281 S.W.2d 44 (Tenn. 1955), the Tennessee Supreme Court determined that a five-month delay in providing notice of an automobile collision did not satisfy the requirement that the insured give notice as soon as practicable under the insurance policy. *Id*. at 46. Similarly, in *Sohm v. United States Fidelity & Guaranty Co.*, 352 F.2d 65 (6th Cir. 1965), the Sixth Circuit, applying Tennessee law, determined that a six-month delay in providing notice of a potential claim did not comply with an insurance provision requiring notice as soon as practicable. *Id*. at 68-69. *See also Rural Education Ass'n v. American Fire & Casualty Co.*, 207 F.2d 596, 597 (6th Cir. 1953) (*per curiam*) (applying Tennessee law) (failure to give notice of a claim for almost seven months did not comply with the policy's requirement that notice be given as soon as practicable); *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 707-09 (Tenn. App. 1992) (a five-month delay in notice to an insurance company did not comply with contractual duty for "prompt" notice of a claim); *Griffith Motors, Inc. v. Compass Insurance Co.*, 676 S.W.2d 555, 558 (Tenn. App. 1983) (notice provided nine months after the event that could give rise to a claim was not notice "as soon as practicable" under the terms of the policy).

Having reviewed the record and afforded reasonable inferences to Consumers (but also noting that Consumers does not allege extenuating factors excusing or explaining its failure to provide earlier notice), the Court concludes that as a matter of law Consumers did <u>not</u> provide U.S. Specialty with notice of its claim as soon as practicable as required under the U.S. Specialty policies. To that end, it has long been the law in Tennessee that "notice provisions of an insurance policy are valid conditions precedent to coverage, and in the absence of notice as required, no coverage is afforded." *Id*. at 557 (*quoting Tennessee Farmers Mutual Insurance Company v. Nee*, 643 S.W.2d 673, 675 (Tenn. App. 1982)). *See also Phoenix Cotton Oil Co. v. Royal Indemnity Co.*, 140 Tenn. 438, 205 S.W. 128, 129 (Tenn. 1918).

In light of the foregoing discussion and conclusion of the Court that the notice issue supports summary judgment in favor of U. S. Specialty and Houston, the Court finds it unnecessary to address the merits of any additional grounds asserted in either defendant's summary judgment pleadings. Accordingly, it is

**ORDERED** that the *Amended Motion For Summary Judgment by Defendants U. S. Specialty Insurance Company And Houston Casualty Company,* filed October 11, 2013 [Doc. 67] is **GRANTED** and summary judgment in this matter is entered in favor of U.S. Specialty Insurance Company and Houston Casualty Company.

    */s/ John T. Maughmer*
    **John T. Maughmer**
    **United States Magistrate Judge**